# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | :    **Crim. No. 06-186 (GK)** |
| | : |
| STEPHANIE EMERSON OLDS | : |

## GOVERNMENT'S MOTION TO INTRODUCE EVIDENCE OF
## THE DEFENDANT'S OTHER CRIMES AND BAD ACTS

The government hereby files this Motion to Introduce Evidence of the Defendant's Other

Crimes and Bad Acts.  In support of this pleading, the government respectfully submits:

<u>General Legal Principles</u>

The government serves notice of the following evidence that it may seek to introduce

which is arguably "extrinsic" to the charged offenses and thus subject to analysis under

Fed.R.Evid. 404(b).[1]

The legal principles associated with Rule 404(b) are oft-stated and not subject to serious

dispute.[2]  One District Judge of this Courthouse provided the following concise summary:

---

[1] The government has provided discovery on all of the other crimes and bad acts addressed in this pleading.  When the government estimated the length of the trial, it factored presentation of this evidence into the estimate.

[2]     Rule 404(b) of the Federal Rules of Evidence governs the admission of other crimes, wrongs, or bad acts of a defendant. In relevant part, Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

The D.C. Circuit has described Rule 404(b) as one of inclusion rather than exclusion, United States v. Bowie, 232 F.3d 923, 929 (D.C.Cir. 2000), and has explained that it excludes only evidence that "is offered for the sole purpose of proving that a person's actions conformed to his or her character," United States v. Long, 328 F.3d 655, 661 (D.C. Cir.1993).[3]

To the extent that it is not already admissible due to being direct and substantive evidence of the charged offenses, evidence of other crimes, wrongs, or bad acts is admissible under Federal Rule of Evidence 404(b) if offered for a permissible purpose. Such permissible purposes include proof of intent, motive, opportunity, plan, knowledge, identity or absence of mistake or accident. United States v. Pindell, 336 F.3d 1049, 1056 (D.C. Cir.2003); United States v. Miller, 895 F.2d 1431, 1436 (D.C. Cir.1990); see also United States v. Brazel, 102 F.3d 1120, 1153-54 (11th Cir.1997) (threats made by defendant to cooperating co-conspirator in holding cell was properly admissible under Rule 404(b) as evidence showing "consciousness of guilt"). The Court of Appeals for this Circuit has made clear, however, that Rule 404(b) merely defines the one *im*permissible purpose for bad act evidence; it does not define the set of permissible purposes for use of such

---

Fed.R.Evid. 404(b).

    [3]    These principles were recently ratified by this Circuit in United States v. Lawson, 410 F.3d 735, 741 (D.C. Cir. 2005) (Roberts, J.):  "Federal Rule of Evidence 404(b), which governs the admission of evidence of other crimes or bad acts, 'is a rule of inclusion rather than exclusion.' [Bowie, 232 F.3d at 929.] The rule bars admission of such evidence when offered for the purpose of proving that a defendant acted in conformity with his character, but allows admission so long as the evidence is offered for any other relevant purpose. Id."

evidence. Miller, 895 F.2d at 1436.[4]  .........

      The Court undertakes a two-part analysis to determine admissibility in the Rule 404(b) context. See Miller, 895 F.2d at 1435. First, the Court considers whether the evidence is "probative of some material issue other than character." United States v. Clarke, 24 F.3d 257, 264 (D.C. Cir.1994); Fed.R.Evid. 401. Second, if the Court deems the evidence to be relevant, the Court should exclude the evidence only if probative value "is substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403; Long, 328 F.3d at 662. In close cases, the rule tilts toward the admission of the uncharged conduct evidence. See United States v. Johnson, 802 F.2d 1459, 1464 (D.C. Cir.1986) ("the balance should be generally struck in favor of admission when the evidence indicates a close relationship to the event charged") (quoting United States v. Day, 591 F.2d 861, 878 (D.C. Cir.1978)). The D.C. Circuit has recognized that "Rule 404(b) evidence will often have ... multiple utility, showing at once intent, knowledge, motive, preparation, and the like." United States v. Crowder, 141 F.3d 1202, 1208 (D.C. Cir.1998) (en banc). If evidence is ruled admissible, the trial court, when the defendant so requests, must give a limiting instruction. Fed.R.Evid. 105. A trial court's Rule 404(b) admissibility determination is reviewed under an abuse of discretion standard. Pindell, 336 F.3d at 1056-57; [United States v. Linares, 367 F.3d, 941, 949 (D.C. Cir. 2004)].

United States v.  Morrow, 2005 WL 3159572 (D.D.C. April 7 2005) *3-4 [footnotes inserted].

---

[4]    The precise language of Miller could hardly be more explicit:  "[U]nder Rule 404(b), any purpose for which back acts evidence is introduced is a proper purpose so long as the evidnce is not offered solely to prove bad character."  United States v. Miller, 895 F.2d at 1436 (emphasis in original).

As the above excerpt explains, evidence of acts which are part of, or "inextricably

intertwined" with, a charged crime is direct proof of that crime and is not subject to Rule 404(b)

analysis. <u>United States v. Badru</u>, 97 F.3d 1471, 1474-75 (D.C. Cir. 1996). Although the Court

of Appeals has occasionally criticized the bifurcation of evidence into that which is "inextricably

intertwined" or "intrinsic" and that which is "extrinsic" (and thus subject to 404(b) analysis), <u>see</u>

<u>United States v. Bowie</u>, 232 F.3d 923, 927 (D.C. Cir. 2000), this bifurcation remains the law in

this Circuit. <u>See</u> <u>United States v. Alexander</u>, 331 F.3d 116 (D.C. Cir. 2003) (commenting on

<u>Bowie</u>: "Although we have recently expressed our dissatisfaction with the extrinsic-intrinsic

distinction, <u>see</u> <u>Bowie</u>, 232 F.3d at 927-29, we have nonetheless recognized that 'at least in a

narrow range of circumstances . . . evidence can be "intrinsic to" the charged crime.'").

<u>The Indictment</u>

The Indictment charges the defendant with Filing False Claims, in violation of 18 U.S.C.

§ 287, and First Degree Fraud, in violation of 22 D.C. Code §§ 3221(a), 3222(a)(1). The charges

stem from a scheme in which the defendant filed false federal tax returns in 2001, 2002, and

2003 and false District of Columbia returns in 2001 and 2002. During each of these years, the

defendant provided a tax preparer with false information that the defendant knew would cause

the tax preparer to file false returns. As a result, the defendant obtained large tax refunds to

which she was not entitled.

Specifically, for each of these tax years, the defendant gave to her tax preparer a forged

W-2 that indicated that she was employed by a urologist, and that the urologist had withheld

from her salary large amounts of money for federal and District of Columbia income tax

payments. As the defendant knew, the urologist was not then her employer and withheld no

-4-

money for the payment of federal or District of Columbia taxes. In fact, the urologist had died prior to 2001.

On each Form 1040 and Form D-40 for these tax years, the defendant claimed large tax refunds. For the tax years of 2001 and 2002, the United States mailed to the defendant tax refund checks of $21,260.00 and $28,139.00, respectively. For the tax year of 2003, the defendant claimed a tax refund of $26,468.00, but the United States did not mail her a refund check. For the tax year of 2001, the District of Columbia mailed a tax refund check of $13,902.00 to the defendant. For the tax year of 2002, the District of Columbia mailed to the defendant a tax refund check of $23,036.00. The United States Postal Service intercepted the refund check from the mail before the defendant received it.

The Defendant's Other Crimes and Bad Acts

A.    The defendant's filing of false 1998, 1999, and 2000 tax returns

The government wishes to introduce evidence showing that the defendant's scheme to claim refunds by filing false federal and D.C. tax returns included not just her 2001-2003 tax returns, but also false federal and D.C. returns that she filed in the three preceding tax years. The defendant's false-refund scheme was identical throughout this six-year period: she filed forged W-2 forms indicating that she worked for a urologist and that large sums of money were withheld for federal and District of Columbia taxes. In fact, she had ceased working for the urologist prior to 1998. As a result, the defendant received large tax refunds to which she was not entitled.

The details of the scheme to claim refunds by filing false 1998-2000 tax returns are as follows:

In 1998, Olds prepared her own Form 1040 (federal) and Form D-40 (District of

Columbia) returns.  For the other tax years, Olds employed a tax preparer ("Tax Preparer") to prepare each of these Form 1040 and Form D-40 tax returns.  Each year, Olds provided the Tax Preparer with a Form W-2, which, among other things, purported to indicate the amount of money that Olds's employer had withheld from her salary for the payment of federal and District of Columbia individual income tax.

For the tax years of 1999 and 2000, based on the W-2 and other data that Olds provided, the Tax Preparer completed and transmitted Form 1040 to the United States Internal Revenue Service.  Also, for the tax years of 1999 and 2000, based on the W-2 and other data that Olds provided, the Tax Preparer completed and transmitted Form D-40 to the District of Columbia Office of Tax and Revenue.  Olds directed the Tax Preparer to use a Washington, D.C. post office box on each Form 1040 and Form D-40 as Olds's address.  For the tax year of 1998, using a Washington, D.C. post office box as her address, Olds filed her Form 1040 with the Internal Revenue Service and her Form D-40 with the District of Columbia Office of Tax and Revenue.

Olds filed false Form 1040 and Form D-40 returns for the tax year of 1998.  Olds appended to her Form 1040 and Form D-40 forged W-2 forms indicating that she was employed by a urologist (the "Urologist"), and that the Urologist had withheld from her salary large amounts of money for federal and District of Columbia income tax payments.  In truth and in fact, as Olds well knew, the Urologist was not her employer and withheld no money for the payment of federal or District of Columbia taxes. Olds entered this false withholding information on her Form 1040 and Form D-40 and claimed large tax refunds to which she was not entitled.

For the remaining tax years, Olds provided the Tax Preparer with false information that Olds knew would cause the Tax Preparer to file false federal and District of Columbia individual

income tax returns on Olds's behalf.

Specifically, for each tax year in which the Tax Preparer prepared Olds's returns, Olds gave to the Tax Preparer a forged W-2 that indicated that she was employed by the Urologist, and that the Urologist had withheld from her salary large amounts of money for federal and District of Columbia income tax payments.   In truth and in fact, as Olds well knew, the Urologist was not then her employer and withheld no money for the payment of federal or District of Columbia taxes.  On each Form 1040 and Form D-40 for these tax years, Olds claimed large tax refunds.

As a result of her actions, Olds claimed and received the following false tax refunds from the United States:

| Tax Year | Date that Olds filed her tax return | Amount of refund claimed by Olds | Date that the refund check was mailed to Olds | Amount of refund received by Olds |
|---|---|---|---|---|
| 1998 | 3/29/99 | $12,718.00 | 5/28/99 | $12,718.00 |
| 1999 | 4/12/00 | $10,924.00 | 4/28/00 | $10,924.00 |
| 2000 | 1/23/01 | $16,183.00 | 2/23/01 | $16,183.00 |

As a result of her actions, Olds claimed and received the following false tax refunds from the District of Columbia[5]:

_____

[5]In 1999, the District of Columbia audited the defendant's return for the tax years of 1996-1998. The audits involved an examination of certain itemized deductions that Olds had claimed.   The defendant declined to participate in the audit.   The 1998 return was adjusted, after audit, from a refund of $5,431.00 to a refund of $3,532.00.  The adjusted refund was used to offset audit liability of $3,104.60 for 1996 and to offset audit liability for 1997.  Olds, therefore, did not receive a check for this $3,532.00.  For the 2000 tax year, Olds's requested refund of $10,189.00 was reduced to $6,061.92 to pay the outstanding balance due from the audit of the 1997 return.

| Tax Year | Date that Olds filed her tax return | Amount of refund claimed by Olds | Date that the refund check was mailed to Olds | Amount of refund received by Olds (including refund money used to pay outstanding tax liability) |
|---|---|---|---|---|
| 1998 | 4/15/99 | $ 5,431.20 | No check mailed. Used to pay outstanding tax liability. | $3,532 .00 |
| 1999 | 4/15/00 | $ 7,061.00 | 4/18/00 | $7,061.00 |
| 2000 | 2/05/01 | $10,189.00 | 2/9/01 | $6,061.92 |

The evidence regarding the defendant's filing of false 1998-2000 tax returns is clearly admissible under Rule 404(b) to prove the defendant's knowledge and intent. Specifically, if, for the tax years of 1998-2000, the defendant filed returns falsely stating that a urologist had withheld large sums of money for federal and D.C. taxes, then it is more likely that the identical false statements on her 2001-2003 returns were knowing, rather than accidental.

Courts have routinely permitted the admission of evidence of a defendant taxpayer's conduct in one tax year as relevant to explaining her conduct, motive and intent in the subsequent years. See, e.g., United States v. Daraio, 445 F.3d 253, 264 (3d Cir. 2006) (in tax-evasion cases, "[a] defendant's past taxpaying record is admissible to prove willfulness circumstantially.") [citation omitted]; United States v. Chmielewski, 218 F.3d 840, 843 (8th Cir. 2000) (holding that evidence of past tax fraud was admissible to prove criminal intent in a tax case); United States v. Ebner, 782 F.2d 1120, 1126 n. 7 (2d Cir.1986) ("The jury may consider evidence of intent to evade taxes in one year as evidence of intent to evade payment in prior or subsequent years.");

United States v. Ausmus, 774 F.2d 722, 727-28 (6th Cir. 1985) ("The defendant's failure to pay taxes, both prior to and following the years in question, demonstrates a pattern, plan, and scheme indicating that his failure to pay his taxes in 1978, 1979, and 1980 was not the result of an accident, negligence, or inadvertence.  The pattern demonstrates willfulness, which was part of the government's prima facie case."); United States v. Farber, 630 F.2d 569, 572 (8th Cir. 1980) ("[S]ubsequent tax paying conduct is relevant to the issue of intent or wilfulness in a prior year." [citations omitted].); United States v. Magnus, 365 F.2d 1007, 1011 (2d Cir.1966) ("[P]rior taxpaying history, both federal and state, was probative of [taxpayer's wilfulness in failing to pay substantial amounts of federal taxes in [the years at issue.]").  Although the defendant is charged with filing false claims and first-degree fraud, rather than tax evasion, the same reasoning applies. The government must prove that the defendant knew that her tax returns were false, and the proffered evidence is highly probative of that relevant fact, and is, therefore, admissible.

B.      The defendant's failure to report income derived from her theft of over $30,000 from the District of Columbia

The government wishes to introduce evidence that the defendant failed to report, on her 2003 tax return, income that she derived from stealing over $30,000 from the District of Columbia.  The evidence is admissible because it is relevant to proving that the defendant's claim for a refund on her 2003 federal tax return was false, and that she knew that it was false.

The facts are as follows:

From March 2002 until December 2003, Olds was employed at the District of Columbia Child and Family Services Agency ("CFSA") as a budget analyst.  Olds also worked in CFSA's Accounting Division, where her duties included processing purchase orders and invoices for the agency and entering information into an accounting database.

From July 2003 until December 2003, Olds devised and implemented a scheme to steal money that rightfully belonged to CFSA.  Olds called businesses that owed money to CFSA and directed those businesses to make checks payable to her.  Olds then deposited these checks into her personal bank account, having no authority from CFSA to do so.  On two occasions, Olds deposited checks payable to CFSA into her personal account by presenting to her bank false letters purporting to be from CFSA and purporting to authorize Olds to keep this money.  In total, Olds fraudulently deposited six checks, totaling $30,859.87.  This money rightfully belonged to CFSA.

The first of these checks was a $3,520.58 check drawn on the account of Kinko's, and dated July 11, 2003.  On July 16, 2003, Olds deposited this check into her personal bank account. She had obtained the check after learning that Kinko's owed CFSA money.  Olds then contacted Kinko's and asked the company to send her a check for the balance owed to CFSA.  Kinko's thereafter made the check payable to "S.L. Emerson."  Olds's maiden name is Emerson.

On August 20, 2003, Olds deposited into her personal bank account a check for $9,563.58.  The check was drawn on the account of Virginia Commonwealth University, and was payable to "Child and Family Svcs Agency, SL Emerson."  Olds directed the university to make the check payable to her.

On September 16, 2003, Olds deposited into her personal bank account a check for $860.54.  The check was drawn on the account of Georgetown University and was payable to Stephanie L. Olds.  Again, Olds knew that Georgetown owed CFSA money, and Olds contacted Georgetown to ask them to send the balance owed in a check made payable to her.

On November 4, 2003, Olds deposited into her personal bank account a check for

$2,830.17.  The check was drawn on the account of AT&T at FCC National Bank, and was payable to "Child and Family Serv-Dis of C, Attn: Stephanie Olds."  CFSA's address, 400 Sixth Street, S.W., appears on the face of the check.  When Olds presented the check for deposit, she also presented a letter on CFSA letterhead purported to be signed by a Karen Edwards in the Office of the Controller.  The letter stated: "This check belongs to Stephanie Olds.  It is not made out to CFSA.  This is her payroll check for consultant work done on a contract.  We are holding no claim to this payment.  Our name is only to reference the contract worked on."  Olds had no right to the check; in fact, there was no one by the name of Karen Edwards who worked in the Office of the Controller.

On December 1, 2003, Olds deposited into her personal bank account a check for $8835.00.  The check was drawn on the account of Keystone Education and was payable to "DC Child & Family Serv. Agency."  On this occasion, at the time of deposit, Olds also presented a fictitious letter purportedly from Karen Edwards.  The letter read: "In regards to check #00164126 for $8,835.00 made payable to CFSA.  This check after audit findings is contractual pay for Stephanie Emerson-Olds.  Please allow her to deposit this payment as CFSA relinquishes all rights entitled to this check."  Olds had no such contract, and had no authority to convert the check to her own use.

On December 5, 2003, Olds deposited into her personal bank account a check for $5,250.00.  The check was drawn on the account of The Devereux Foundation and was payable to "DC Child & Family Services, Accounting Division."  Once again, at the time of deposit, OLDS presented a fictitious letter purportedly from Karen Edwards.  The letter said: "This is contractual pay for Stephanie Olds.  After audit findings it was concluded that this check belongs

to her.  Please allow her to deposit it and funds available immediately."

This evidence is admissible for at least two reasons.

First, it provides evidence that the defendant knew that her claim for a tax refund on her 2003 federal return was false.   Line 21 of IRS Form 1040 contained an entry for "other income."  The defendant did not declare on Line 21 (or anywhere else on the return) the over $30,000 that she had obtained from her fraud scheme.  Declaring an additional $30,000 would obviously increase a taxpayer's liability and decrease any refund to which she would otherwise be entitled.  This glaring omission is further evidence of the defendant's knowledge that her claim for a federal tax refund of $26,468.00 was false.

Second, the evidence is admissible because it establishes a pattern of conduct that helps to prove the defendant's criminal intent.  As the D.C. Circuit has explained:

> Evidence of a similar act must meet a threshold level of similarity in order to be admissible to prove intent...  What matters is that the evidence be relevant "to show a pattern of operation that would suggest intent" and that tends to undermine the defendant's innocent explanation.  Thus, this court has opined, "the admissible bad acts evidence need not show incidents identical to the events charged, so long as they are closely related to the offense."

United States v. Long, 328 F.3d 655, 661 (D.C. Cir. 2003) (citations omitted).  In this case, the theft scheme and the tax scheme are strikingly similar – in both, the defendant made a claim to the government for money; in both, she used forged documents (forged W-2 forms in one case, and forged letters purportedly from Karen Edwards in the other); and in both, the forged documents that she used contained names of people who did not exist (a deceased urologist in one case, and a non-existent Karen Edwards in the other).  Also, the defendant engaged in the two schemes contemporaneously.  This Court should admit evidence of the theft scheme because

it would "show a pattern of operation that would suggest intent" in the charged tax scheme.

608(b) Evidence

The defendant has engaged in other bad acts and crimes that are probative of her lack of truthfulness. The government is not seeking to admit evidence of these acts under Rule 404(b), but is providing notice that, if the defendant testifies, the government wishes to cross-examine the defendant about them.[6]

Rule 608(b) provides that:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness ... concerning the witness' character for truthfulness or untruthfulness....

Rule 608 (b) "allows a witness's credibility to be attacked based on misconduct that, while not constituting a criminal conviction, nevertheless tends to show that the witness is untruthful." United States v. Whitmore, 359 F.3d 609, 620 (D.C. Cir. 2004). Acts "probative of untruthfulness under Rule 608(b) include such acts as forgery, perjury, and fraud." Ad-Vantage Telephone Directory Consultants, Inc. v. GTE Directories Corp., 37 F.3d 1460, 1464 (11th Cir. 1994). See also United States v. Manske, 186 F.3d 770, 775 (7th Cir. 1999) (noting that Rule 608(b) permits cross-examination into acts involving fraud, deceit, perjury, false statements, embezzlement, false pretenses, and theft). A court may limit Rule 608(b) cross-examination based on Rule 403. Whitmore, 359 F.3d at 619. However, Rule 403 "tilts ... toward the

---

[6]Rule 608(b) does not contain a requirement that a party provide notice of areas of cross-examination. Nevertheless, the government is providing notice in order to reduce delays during trial.

-13-

admission of evidence in close cases; when performing the balancing test required under Rule 403, the balance should be struck in favor of admission." Id. (citations omitted).

The government wishes to cross-examine the defendant about the following matters:

1.     In 2000, the defendant stole approximately $12,000 from Dr. Michael Paul, for whom she was then employed.  The defendant used Dr. Paul's endorsement stamp to endorse checks payable to Dr. Paul, and then converted the money to her own use.  The defendant signed a letter to Dr. Paul confessing to the theft, and then paid Dr. Paul $12,000 in restitution for the theft.

2.     The urologist for whom the defendant worked in 1997 (and whose name appears on the fraudulent W-2 forms) fired the defendant for stealing money from his practice.  The government is still gathering facts about this incident.

Both incidents involve theft, which is in appropriate area of cross-examination under Rule 608(b).

WHEREFORE, the government respectfully requests that the Court grant this Motion.  A proposed order is attached.

Respectfully submitted,

Jeffrey A. Taylor
United States Attorney

_____
Howard R. Sklamberg
Assistant United States Attorney
Fraud & Public Corruption Section
555 Fourth Street, N.W.
Fifth Floor
Washington, DC 20001

-14-

Certificate of Service

I hereby certify that on November 13, 2006, a copy of this pleading was served by electronic mail upon Mary Petras, Esq., Federal Public Defender's Office.

_____
Howard R. Sklamberg
Assistant United States Attorney